IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

STATE OF TENNESSEE, *ex rel* )
WIRELESS PROPERTIES, LLC )
  Plaintiffs, )
   )
vs. ) No. 1:06-cv-157
   )
CITY OF CHATTANOOGA ) Mattice/Carter
   )
  Defendant. )

REPORT AND RECOMMENDATION

I. Introduction

This matter arises out of the decision of the City of Chattanooga Board of Zoning Appeals

(Zoning Board) to deny the application of Wireless Properties, LLC (Wireless) to build a

communications tower at 6980 Delbert Lane in Chattanooga, Tennessee (the Delbert Lane Property).

This action has been referred to the undersigned Magistrate Judge by the District Court for a hearing

and determination and a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(A), (B), and

(C) and Fed. R. Civ. P. 72(a).  Wireless brings this petition for a writ of mandamus pursuant to the

Telecommunications Act of 1996, 47 U.S.C. § 332, seeking an order from the Court requiring the

Zoning Board to grant Wireless' application for the communications tower at the Delbert Lane

Property in Chattanooga.  The parties have filed cross-motions for summary judgment which are ripe

for review.  For the reasons stated herein, it is RECOMMENDED the City of Chattanooga's motion

for summary judgment [Doc. 22] be GRANTED and Wireless' motion for summary judgment [Doc.

24] be DENIED.

1

## II. Relevant Facts

### A.  Current Communications Tower Application

Wireless is engaged in the business of constructing, owning and managing telecommunications towers in the southeast United States.  On or about April 25, 2006, Wireless filed an application for a Land Disturbing Activity Permit and Building Permit (the "Application") with the Public Works Department of the City of Chattanooga (the City).  The permit Application was for the construction of a 180-foot monopole communications tower on the Delbert Lane Property.  (Exhibit B attached to Amended Complaint, Doc. 4-6).  The Delbert Lane Property is subject to a written option to lease in favor of Wireless.  (Exhibit B, Wells Affidavit, Doc. 26-2).  The appropriate filing fee accompanied the Application and was accepted by the City at the time of filing.  Wireless also made additional submissions with the Application in order to comply with the City's regulations regarding communications towers.

### B.  Zoning History of the Delbert Lane Property

On September 11, 1986, the Delbert Lane Property was re-zoned from R-2 Residential to R-3 Residential.  (Record,[1] at 146).  This zone change occurred as a result of the request of then property owner, Bobby Williams, who requested to build a triplex on the site.  (Record at 89-91).  This request required a change of zoning from R-2 residential to R-3 residential.  (*Id*.).

Prior to approval by the City Commission and the Mayor, staff at the Chattanooga-Hamilton County Regional Planning Commission reviewed the request and recommended its denial on three grounds:

---

[1]The record of the proceedings before the Zoning Board is bates labeled 001-196 and attached to Wireless' Motion for Summary Judgment. Citations to the proceeding before the Zoning Board will be to the bates number page(s) and will be designated as "Record at ____."

A. This would be a spot zone and could encourage additional similar requests.
B. This area is predominantly low density. Traffic in this area is already a problem.
C. The site is already zoned for a duplex.

(Record at 90). The staff report also noted that the surrounding development was residential. *Id.*

The re-zoning request was then the subject of discussion before the City Commission, the

municipal body then charged with making such decisions, on September 9, 1986. The minutes from

that hearing before the City Commission state in relevant part:

Barry Bennett, of the Planning Commission Staff, made the presentation. He stated
that the staff has no real problem with an additional duplex because of adjoining
duplexes, but that they do have a problem with additional R-3 because of trying to
maintain a low density. He stated there was no opposition at the Planning
Commission meeting.

The applicant [Mr. Bobby Joe Williams] was present and stated that he wants to get a
3-family dwelling. In response to an inquiry from Commissioner Clark as to whether
he would have a place for cars to turn around on the property or whether they would
have to back out, the applicant stated they would turn around on the property and that
he plans to have one driveway off Concord and one off Delbert. Commissioner
Clark stated that if this is approved, it could be limited to one triplex, and the
applicant indicated a willingness to do so.

Mr. Carl G. Turner, 7002 Genoa Drive, expressed opposition, pointing out the traffic
hazard of Concord's being narrow and serving as a connector for a number of
residential areas and the fact that this particular site is on a S-curve on Concord. He
stated that two lots north of the site applied for the same zoning and were denied.

In response to an inquiry by Mayor Roberts as to how this lot compares with the ones
that were denied, Mr. Bennett stated that the others had more single family residences
around them, whereas this one has duplexes in the area.

Commissioner Kennedy inquired as to whether it was necessary to have a drive off
Concord and the applicant stated that he doesn't have to, but that he thought that it
would be better to have a drive off each street.

3

(Record at 93) (emphasis added). After discussion, the City Commission passed the request to re-zone the Delbert Lane Property "with the condition that the entrance off Concord will require a turnaround on the property and that one drive goes onto Delbert Lane." (Record at 93).

On September 16, 1986, City Ordinance No. 8697 was formally enacted approving the zoning change at the Delbert Lane Property from R-2 Residential to R-3 Residential. City Ordinance No. 8697 (Ordinance No. 8697) was signed by City Mayor Gene Roberts and City Commissioner Tom Kennedy. (Record at 98). Ordinance No. 8697 provided the following conditions to the rezoning:

That this rezoning is conditioned upon the following:

1.     **Only one triplex** can be constructed on this property.

2.     Only one driveway with access on the North Concord Road with sufficient turnaround on subject property to preclude any car from backing out on to North Concord Road.

3.     Two driveways with access on the Delbert Street.

(Record at 96-97) (emphasis added). Owner of the Delbert Lane Property, Bobby Williams, signed an "Acceptance of Conditions" as part of Ordinance No. 8697 stating in relevant part, "[f]or and in consideration of the rezoning of the property described in the foregoing Ordinance, I as owner of said property do hereby accept and agree to the terms, restrictions, and conditions(s) therein...." (Record at 97).

C.  The City's Zoning History in Regard to Communications Towers

In 1986, communications towers were not permitted on property zoned as R-3. Chattanooga City Code art. V § 301 (1986) [Doc. 29-2].  In 1992, the City passed Ordinance No. 9793 which allowed placement of communications towers in residential zones subject to certain set back restrictions, height restrictions, and wattage restrictions as well as a finding by the "Board" "that to

4

allow installation of such tower will not devalue or otherwise injure adjacent property or constitute a safety hazard." Chattanooga City Code art. VIII § 107(13) (Sept. 15, 1992), Ordinance No. 9793 [Doc. 29-2].

In 1998, the City amended its zoning ordinances once again to provide that "[t]owers shall be permitted in residential zones" subject to certain setback requirements and subject to the special permit requirement. Chattanooga City Code art. VIII § 107(13) (June 2, 1998), Ordinance No. 10705 [Doc. 29-2]. A special permit required a schematic site plan, identification of the intended users of the tower, documentation that no other suitable facilities already exist, documentation of the number of users, a statement of the owner's commitment to allow shared use of the tower, proof that the applicant would be able to take down the tower if it ceased to be used for a period of 12 months, and the names and addresses of all property owners within 300 feet of the tower site. *Id.*

On March 19, 2002, the City of Chattanooga adopted Ordinance No. 11253, Chattanooga City Code, Ch. 38 [Doc. 29-2]. The 2002 Chattanooga City Code, Ch. 38, art. V, § 38.55, Ordinance No. 11253, which the parties agree is currently in effect, permits communication towers in areas zoned as R-3 provided the Zoning Board issues a special permit under the terms specified by Article VIII of Chapter 38 of the 2002 Chattanooga City Code. Obtaining a special permit pursuant to Article VIII requires a schematic site plan meeting certain specifications, identification of the intended users of the tower, documentation that no other suitable facilities already exist, documentation of the number of users, a statement of the owner's commitment to allow shared use of the tower, proof that the applicant will be able to take down the tower if it ceases to be used for a period of 12 months, and the names and addresses of all property owners within 300 feet of the tower site. *See* Chattanooga City Code, Ch. 38, Art. VIII § 107(16), Ordinance No. 11253.

5

D.  Hearings on Wireless' Application Before the Zoning Board

Wireless' Application was initially presented to the Zoning Board on May 10, 2006.  (Record at 17). During the hearing, various concerns were raised by both public officials and private citizens that the proposed communications tower would cause aesthetic harm, result in diminution of property values, and was not in keeping with the residential character of the neighborhood.  (Record at 24-33). At that time, City Councilman Jack Benson, representative of the residents in the neighborhood where the Delbert Lane Property is located, spoke on behalf of his constituents to the Zoning Board urging the Zoning Board to find "any loophole" to vote down the proposed communications tower application.  (Record at 24).  Mr. Hyatt, a member of the Zoning Board, then explained that the Zoning Board was required to follow a list of regulations in determining whether to issue a special permit for a communications tower, and  "the value of the neighborhood" and "I just don't like the look of it" "are two things that are not on that list."  (Record at 32).  At that time, the Zoning Board deferred making a decision regarding Wireless' Application because a report (the "Mesa Report") had not been completed.  (Record at  22-23, 33-34).  The Mesa Report was commissioned by the City's Public Works Department to determine whether the proposed communications tower satisfied the City's requirements for showing that there existed a need for a telecommunications tower at the proposed site.  (Record at 44-46).

Subsequent to the May 10, 2006 hearing, the Mesa Report was completed and provided to the Zoning Board.  (Record at 37).   The Mesa Report found the placement of a communications tower on the Delbert Lane Property would improve the signal level in the immediate area and offer

6

improved cellular traffic handling capacity.[2]  Wireless  met the City's technical requirements set forth

in Article VIII of Chapter 38 of the 2002 Chattanooga City Code for the placement of the

communications tower on the Delbert Lane Property.  (Record at 165-171, *see also* City's brief at 1-2,

Doc. 23).  The Zoning Board reconvened on June 14, 2006, to consider further Wireless' Application

and the Mesa Report.

At the June 14, 2006 hearing, neighbors of the Delbert Lane Property and their councilman,

Jack Benson, again expressed opposition based on aesthetic concerns and the perception that a

communications tower would diminish neighboring property values.  (Record at 24-33, 49-52).

Considerable concern was also expressed that the communications tower was not in character with

the residential nature of the neighborhood. (Record at 54-55).  At the meeting, the City's attorney

opined that Ordinance No. 8697 "is conditioned just to a triplex ... that condition does not include

other uses, other than to build a triplex." (Record at 29).

Zoning Board Chairman James Wilson at the June 14, 2006 hearing stated:

> I think the basis on the action [to deny the permit] is the fact that the ruling from the
> City Attorney's office is that the zoning on this particular piece of property limits its

---

2       Specifically, an engineer with Mesa Associates, Inc., the firm which prepared the Mesa
report, opined,

> Present signal strength in the immediate area of the proposed site [the Delbert
> Lane Property] would appear to be adequate; however, this is an area that is
> surrounded by several business districts and has a significant amount of
> automobile traffic concentration.  This could easily present a call volume that is
> greater than the call handling capacity of the surrounding tower sites.  A tower
> located as proposed should greatly improve the signal level in the immediate area
> surrounding State Road 153 and Interstate 75 interchange and offer improved
> cellular traffic handling capacity.

(Record at 153).

use to only a triplex.  It does not specifically set forth that it excludes cell towers, but in its specificity, it says only a triplex.  And a cell tower ain't a triplex.

(Record at 65-66).

On July 13, 2006, the Zoning Board formally issued its "Notice of Decision" (Decision) denying Wireless' Application.  In that Decision, the Zoning Board noted the following:  in 1986, the owners of the Delbert Lane Property had requested that the property be "rezoned from R-2 to R-3 for construction of a three (3) multi-family residential structure."  (July 13, 2006 Decision, Ex. 1 at 3, Doc. 24-2).  The City Commission then granted the request subject to the condition that the use of the property would be "limited to one triplex.'" *Id.*  "The Williams accepted the terms of the rezoning with the restriction on the use of the property." *Id.*  Based on this background, the Zoning Board took the following action:

> The Board made and seconded a motion to deny Wireless' application for a Special Permit because the conditional zoning contained in the Ordinance subjects the parcel to site specific conditions (BS Nos. 096-097).  The use of the parcel is limited by the Ordinance, in particular, to the construction of only one (1) triplex (BS Nos. 096-097).  The parcel is also subject to access restrictions (BS Nos. 096-097).  The Board approved the Motion by a vote of five (5) to zero (0) (BS Nos. 065-067).

*Id.*  Thus, the Zoning Board unanimously denied Wireless' Application to build a 180 foot monopole communications tower on the Delbert Lane Property.

### III. Analysis

#### A. Standard of Review

The parties have filed cross motions for summary judgment.  "A grant of a motion for summary judgment is proper when, taking the facts in the light most favorable to the non-movant, there exists no genuine issue of material fact and 'the moving party is entitled to judgment as a matter

8

of law.'" *State of Tennessee ex rel. Wireless Income Properties, Inc. v. City of Chattanooga*, 403 F.3d 392, 396 (6th Cir. 2005) (citing *Walls v. Amerisure Mut. Ins. Co.*, 343 F.3d 881, 884 (6th Cir. 2003)).

### B. The Telecommunications Act of 1996

The Telecommunications Act of 1996 (the Act) was enacted by Congress "to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." *Petersburg Cellular Partnership v. Board of Supervisors of Nottoway County*, 205 F.3d 688, 694 (4th Cir. 2000) (quoting Pub. L. No. 104-104, 110 Stat. 56 (1996)). The Act, 47 U.S.C. § 332(c)(7)(B)(v), provides a cause of action to any person asserting wrongful denial of a permit to build a communications tower. *See* 47 U.S.C. § 332(c)(7)(B)(v) ("Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction.") Wireless commenced this action July 14, 2006, one day after the Zoning Board's July 13, 2006 Decision. Thus, this action is timely filed.

The Act applies two specific limitations on a State's or local government's authority to make zoning decisions affecting the "regulation of the placement, construction, and modification of personal wireless service facilities." 47 U.S.C. § 332(c)(7)(B)(I). States or local governments "(I) shall not unreasonably discriminate among providers of functionally equivalent services; and (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(1)(I) and (II). Particularly relevant to the instant case, the Act further provides:

> Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

47 U.S.C. § 332(c)(7)(B)(iii). "[T]he substantial evidence standard of section 332 is the traditional standard employed by the courts for review of agency action." *Telespectrum, Inc. v. Public Service Commission of Kentucky*, 227 F.3d 414, 423 (6th Cir. 2000); *see also New Par v. City of Saginaw*, 301 F.3d 390, 396 (6th Cir. 2002). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Telespectrum, Inc.*, 227 F.3d at 423; *see also New Par*, 301 F.3d at 396. In determining whether a state or local government's decision to deny a permit for siting a tower is supported by substantial evidence, the court must consider the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Telespectrum, Inc.*, 227 F.3d at 423; *see also New Par*, 301 F.3d at 396. "The [Act's] substantial evidence requirement 'surely refers to the need for substantial evidence under the criteria laid down by the zoning law itself.' ... 'The substantial evidence test applies to the locality's own zoning requirements....'" *Cellco Partnership v. Franklin County, Ky*, 553 F. Supp.2d 838, 845-46 (E.D. Ky 2008) (quoting *Town of Amherst, N.H. v. Omnipoint Communications Enterprises*, 173 F.3d 9, 14 and 16 (1st Cir.1999).

The Act is not intended to strip local governments of zoning authority for communications towers. *See* 47 U.S.C. § 332(c)(7)(A) ("Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.")[3] Section 332(c)(7)(B) "'is a deliberate compromise between two competing aims– to facilitate nationally the growth of wireless telephone service and to maintain substantial local control

---

[3]    Personal wireless facilities are defined as "facilities for the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(C)(ii). It is undisputed that a tower used to transmit signals for cellular telephone users is a facility for the provision of wireless services.

10

over siting of towers." *Telespectrum, Inc.,* 227 F.3d at 423 (quoting *Omnipoint Corp. v. Zoning Hearing Bd of Educ.*, 181 F.3d 403, 407 (3d Cir. 1999)). See also *State of Tennessee ex rel. Wireless Income Properties, Inc.,* 403 F.3d at 396 ("The [Act] does not preempt all authority of state or local governments over the regulation of wireless towers. Instead, it merely imposes several substantive and procedural requirements upon the state or local government's consideration of permit applications.")

C. The Zoning Board's July 13, 2006 Decision is Supported by Substantial Evidence

In the instant case, the alleged error is not a procedural one; rather, it is a substantive one. Wireless asserts that the Zoning Board's Decision to deny its Application for a communications tower at the Delbert Lane Property is not supported by substantial evidence.

In its written July 13, 2006 Decision, the Zoning Board was clear that it was denying Wireless' Application to build the communications tower on the Delbert Lane Property based on its interpretation of Ordinance No. 8697. The Zoning Board interpreted the following language of Ordinance No. 8697, "[o]nly one triplex can be constructed on this Property," to mean that nothing but a single triplex could be built on the Delbert Lane Property. Wireless argues this interpretation is flawed, and the only reasonable interpretation of this critical phrase is the following: the Delbert Lane Property may be used for one triplex or any other use permitted in an R-3 zone.

Tennessee law allows local governments to regulate land use. The City may regulate location, height, bulk, number of stories and size of buildings, and other structures, the percentage of a lot which may be occupied, the sizes of yards, courts and other open spaces, the density of population, and the uses of buildings, structures and land for trade, industry, residence, recreation, public activities, and other purposes. *See* Tenn. Code. Ann. § 13-7-201(a)(1). Further, Tenn. Code. Ann. § 13-7-201(b) authorizes the City of Chattanooga to engage in conditional zoning. *Copeland v. City of*

11

*Chattanooga*, 866 S.W.2d 565, 567 (Tenn. Ct. App. 1993). Tenn. Code. Ann. § 13-7-201(b) provides in relevant part:

> the chief legislative body of any municipality is further authorized and empowered to rezone properties conditionally or based upon contract, where the agreed conditions are designed to ameliorate injuries created by the rezoning to surrounding property interests or to municipal interests.

One short, seemly innocuous phrase is the source of the present conundrum: "Only one triplex can be constructed on this property." Ordinance No. 8697. If *only* modifies just *one,* then the phrase at issue means anything permissible for R-3 purposes can be built on the property and if the owner intends to build a triplex, then he can build only one – not two or three or four – only one. But if *only* modifies the two word phrase *one triplex,* then there is but a single use for the Delbert Lane Property, one triplex and nothing but a single triplex.[4] On its face, there is ambiguity in the usage of *only* in Ordinance No. 8697 which requires the undersigned to turn to Tennessee's rules of statutory construction.

In Tennessee, "[c]ourts should construe municipal ordinances, including zoning ordinances, using the same rules of construction applicable to statutes." *Tennessee Manufactured Housing Ass'n v. Metro. Gov't of Nashville*, 798 S.W.2d 254, 260 (Tenn. Ct. App. 1990) (citing *Carroll Blake Constr. Co. v. Boyle,* 203 S.W. 945, 948 (Tenn. 1918)); *see also Western Express, Inc. v. Metro. Gov't of Nashville*, 2007 WL 2089744 *5 (Tenn. Ct. App. July 11, 2007). "When interpreting statutes, a reviewing court must ascertain and give effect to the legislative intent without restricting or expanding the statute's intended meaning." *U.S. Bank, N.A. v. Tennessee Farmers Mut. Ins. Co.*,

---

4 Apparently, this unassuming, little word, *only,* has been a troublemaker for many years, and grammarians continue to advise about its proper usage. *See e.g.* H.W. FOWLER AND R.W. BURCHFIELD, FOWLER'S MODERN ENGLISH USAGE 551-553 (3d ed. 1996) "The placing of *only* takes one to a front-line battle which has been taking place for more than 200 years." *Id.* at 553.

__S.W.3d __, 2009 WL 199856 *3 (Tenn. Jan. 29, 2009). "The courts must examine the language of the statute and, if the language is unambiguous, apply the ordinary and plain meaning of the words used. [ ] Furthermore, every word in a statute is presumed to have meaning and purpose." *Id.* "In short, the cardinal rule of statutory construction is to effectuate legislative intent, with all rules of construction being aides to that end." *Id.* (internal citation omitted).

One such "aide" to the "cardinal rule" is that given ambiguity, a zoning ordinance should be construed in favor of property owners' right to the free use of their property. *Tennessee Manufactured Housing Ass'n*, 798 S.W.2d at 260; *State ex rel. Morris v. City of Nashville,* 343 S.W.2d 847, 850 (Tenn. 1961). The undersigned first turns to the cardinal rule of statutory instruction, giving effect to the intent of the City Commission in passing Ordinance No. 8697. If the intent of the City Commission appears ambiguous, then the undersigned must construe the ordinance in favor of the owner's free use of the Delbert Lane Property.

Based on the evidence in the record before the undersigned, I conclude the City Commission's intention when it passed Ordinance No 8697 was not ambiguous. Prior to the City Commission meeting on September 9, 1986 when Delbert Lane Property owner Bobby Williams made his proposal to rezone in order that he could build a triplex, staff on the City's planning commission prepared a report for the City Commission indicating the area surrounding the Delbert Lane Property was entirely residential with a low density. At the September 9, 1986 City Commission meeting, there was discussion concerning the desire to keep the area "low density." It was noted there were already duplexes in the area, and concern was discussed about providing safe access to the road from the triplex should one be built. In keeping with the concern that the neighborhood remain a low density residential neighborhood, Commissioner Clark advised Bobby

13

Williams, "if this [the rezoning request] is approved, it could be limited to one triplex." (Record at 93). Mr. Williams agreed to that condition. *Id.* Eventually, the Commission decided that allowing a triplex, a residence for three families, where a duplex, a residence for two families, was already permitted would be an acceptable use of the property, provided the driveway problems were resolved – the implication being three families in the structure as opposed to just two would not undermine the low density residential character of the neighborhood. The City Commission never considered the possibility of any other structure permitted by R-3. Under the 1986 City Code in effect at the time Ordinance No. 8697 was passed, the only uses *not* permitted by R-2 which *were* permitted by R-3 were apartment houses, boarding and lodging houses, hospitals, nursing homes, and clinics. *See* Chattanooga City Code art. V §§ 201 and 301 (1986). Interestingly, Section 301 of the 1986 Chattanooga City Code art. V which set forth the permissible uses for an R-3 zone did not list "triplex" or "three-family dwelling" as an acceptable use. The closest use to a triplex enumerated in Section 301 was "apartment houses." *Id.* That Ordinance No. 8697 delineates a use for the Delbert Lane Property which is not specifically enumerated in the code indicates to the undersigned that the City Commission intended to make a very special, singular exception to the permitted use of the Delbert Lane Property. Had the Commission intended to allow multiple family dwellings other than triplexes, it could have specified, for example, "only one apartment house." Surely had the Commission intended to rezone the Delbert Lane Property to allow for the possibility of apartments, boarding houses, and nursing homes as well as a triplex, the Commission would have discussed that possibility since these other uses allow a significantly higher density in population than a triplex. It does not make sense that the City Commission would limit triplexes to one in order to maintain the

14

low density of the neighborhood but still intend to give the owner the option of building an apartment or a boarding house or a nursing home on the same piece of property.

Nevertheless, Wireless argues the Zoning Board's interpretation of Ordinance No. 8697, *i.e.,* nothing but a triplex can be built on the Delbert Lane Property, not even a single family residence, "defies common sense." (Wireless brief at 9, Doc. 25). The undersigned respectfully disagrees. Apparently, the City Commission took the property owner, Bobby Williams, at his word. Bobby Williams said he wanted to build a triplex, not a single family home or an apartment – just a triplex. Commissioner Clark made sure Mr. Williams understood he was "limited to one triplex." Hence the phrase in Ordinance No. 8697, "[o]nly one triplex." The City Commission passed a spot ordinance tailored to *Mr. Williams'* property and *Mr. Williams'* request, as evinced by the fact that the City Commission required Mr. Williams to sign a form stating he accepted the conditions placed upon him by Ordinance No. 8697. The undersigned has no doubt that if Mr. Williams had asked the City Commission to keep the other uses permissible in an R-2 zone available as an option to him, the City Commission would have done so – the property was zoned for R-2 at the time the rezoning request was made. But that is not what Mr. Williams asked for, and it doesn't appear that the thought occurred to anyone else. Ordinance No. 8697 addressed the property owner's request and the City Commission's concerns. In ascertaining the City Commission's intent, the undersigned must consider the whole context in which Mr. Williams requested and received the conditional re-zoning. "The background, purpose, and general circumstances under which words are used in a statute must be considered, and it is improper to take a word or a few words from its context and, with them isolated, attempt to determine their meaning." *Eastman Chemical Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). For the foregoing reasons, I conclude the City's Decision to deny Wireless' Application for a

15

communications tower based on its interpretation that Ordinance No. 8697 permitted only a triplex is supported by substantial evidence.[5]

The undersigned's inquiry does not end here, however. Wireless argues in the alternative that even if Ordinance No. 8697 limits the Delbert Lane Property to one triplex, subsequent changes in the City's zoning ordinances effectively repealed Ordinance No. 8697 by permitting communications towers in areas zoned as R-3 provided certain special requirements, not at issue in this case, were met. As discussed earlier in section II C of this report, as early as 1992, the City Code allowed communications towers in residential areas provided certain requirements were met. The City Code currently in effect, Ordinance No. 11253, Chattanooga City Code, Ch. 38 art. V, § 38.55, specifically allows communication towers in areas zoned as R-3 subject to the special permit previously discussed. Wireless asserts Ordinance No. 8697 conflicts with Ordinance No. 11253 and therefore has been effectively repealed by Ordinance No. 11253 "[a]s Tennessee law makes clear, an irreconcilable conflict between two statutes implies a repeal of the older statute." (Wireless' brief at 11, Doc. 25).

"Repeals of statutes by implication are not favored and there must be an irreconcilable conflict or repugnancy between the latter statute and the earlier statute that is plain and unavoidable to work a suspension of an earlier statute." *Oliver v. King*, 612 S.W.2d 152, 154 (Tenn. 1981); *see also Reams v. Trostel Mechanical Industries, Inc.*, 522 S.W.2d 170, 173 (Tenn. 1975); *State v. Martin*, 146 S.W.3d 64, 73 (Tenn. Crim. App. 2004). "If the two acts can stand together through a reasonable

---

[5]The undersigned notes that Wireless makes much of Councilman Jack Benson's urging of the Zoning Board to find "any loophole" to reject Wireless' application. Mr. Benson is not a member of the Zoning Board which denied Wireless' application. The Zoning Board's decision is properly set forth in its written July 13, 2006 decision, and the undersigned looks to that decision for the Zoning Board's reasons in denying Wireless' Application.

construction, there is no implied repeal." *Martin*, 146 S.W.3d at 73 (citing *Metropolitan Gov't of Nashville v. Hillsboro Land Co., Inc.*, 436 S.W.2d 850, 854 (Tenn. 1968)). Further, "a special statute or a special provision of a particular statute controls a general provision in another statute or a general provision in the same statute." *Strader v. United Family Life Ins. Co.*, 403 S.W.2d 765, 768 (Tenn. 1966), *see also, Arnwine v. Union County Board of Education. of Educ.*, 120 S.W.3d 804, 809 (Tenn. 2003) ("Specific statutory provisions control over conflicting general provisions"); *In re Harris*, 849 S.W.2d 334, 337 (Tenn. 1993) ("where there is a conflict between a special statute and a general statute, the special statute will be given effect.") "[W]here the mind of the legislature has been turned to the details of a subject and they have acted upon it, a statute treating the subject in a general manner should not be considered as intended to affect the more particular provision." *Arnwine*, 120 S.W.3d at 809 (quoting *Woodruff v. City of Nashville*, 192 S.W.2d 1013, 1015 (Tenn. 1946)); *see also State v. Black*, 897 S.W. 2d 680, 683 (Tenn. 1995) ("Because it is axiomatic that a specific statute on a particular subject will govern a more general one, we believe that § 55-50-303(b)(1) should be construed as an exception to the general rules governing court costs.") (internal citations omitted). This is true even where the special statute is followed by the general. *Woodruff,* 192 S.W.2d at 1015 ("The rule we have last considered [a specific statute trumps a general statute] in its usual application is [also] employed when the general provision is sequent to the special provision.") At the same time,

> There is no rule which prohibits the repeal by implication of a special or specific act by a general or broad one. The question is always one of legislative intention, and the special or specific act must yield to the later general or broad act, where there is a manifest legislative intent that the general act shall be of universal application not withstanding the prior special or specific act."

*Trotter v. City of Maryville*, 235 S.W.2d 13, 519 (Tenn. 1950) (emphasis added).

Ordinance No. 8697 is a spot ordinance, *i.e.* directed at one piece of property, and it prohibits all but a single triplex being built on the R-3 zoned Delbert Lane Property. That Ordinance No. 11253 adds a permitted use (communication towers) to R-3 zoning does not create a conflict with Ordinance No. 8697's restriction. Ordinance No. 11253 is part of the broad zoning plan for the entire City. Generally, it applies to all the property within the City's geographical jurisdiction. However, Tennessee law allows the City to pass conditional zoning ordinances. By its very nature, a conditional zoning ordinance will have certain restrictions that do not apply generally under the existing zoning codes. Ordinance No. 8697 is reconciled to Ordinance No. 11253 by understanding that Ordinance No. 8697 is a conditional zoning ordinance carving out a particular use (one triplex) on one particular piece of property (the Delbert Lane Property). That was true in 1986 and it is still true today regardless of how many permitted uses are added to R-3 zoning. The Zoning Board could add a hundred other uses to the R-3 zone, but Ordinance No. 8697 still would allow only a triplex. Ordinance No. 8697 does not in any way affect the application of Ordinance No. 11253 to other properties in the City.

The instant situation is akin to that in *Arwine v. Union County Board of Education*, 120 S.W.3d 804 (Tenn. 2003) wherein an assistant superintendent sought to enforce a four year contract with the Union County Board of Education. The Tennessee Supreme Court held that certain statutes permitting school employees to be employed only on a school year by school year basis applied rather than a statute allowing municipalities to enter into long term contracts generally. *Id* at 809. Ordinance No. 8697 is very specific to the Delbert Lane Property while Ordinance No. 11253 is a general ordinance covering all property within the City's jurisdiction.

18

The cases cited by Wireless, *State v. Hicks*, 848 S.W. 2d 69 (Tenn. Crim. Ct. App. 1992) and

*Trotter v. City of Maryville*, 235 S.W.2d 13 (Tenn. 1950) do not support Wireless' position.  In *Hicks*,

the Tennessee legislature redefined the crime of a second offense of driving on a revoked license as a

Class B misdemeanor and provided a specific punishment for Class B misdemeanors with the

enactment of the Tennessee Criminal Sentencing Reform Act of 1989.  The *Hicks* court found this

later statute controlling stating, "[i]f a later statute defines a crime that is defined or described in an

earlier statute, the earlier statute is repealed.  Likewise, the same result follows when a later statute

changes a penalty.") *Id.* at 70.  The *Hicks* Court had before it one specific statute redefining a crime

and its penalties which were also set forth in an earlier specific statute. *Id.* at 71.  The two definitions

could not be reconciled and thus the later specific statute was found to have effectively repealed the

earlier specific statute.  Ordinance No. 8697 is specific to the Delbert Lane Property while Ordinance

No. 11253 sets forth the requirements for R-3 zoned properties generally.  Thus, Ordinance No. 8697

applies to the Delbert Lane Property and Ordinance No. 11253 does not; there is no irreconcilable

conflict.

The issue in *Trotter* was the applicability of a certain provision in an act passed by the

legislature authorizing municipalities to undertake public works and to issue bonds to pay for those

public works.  The act in question (the Public Works Act) provided means by which the bonds could

be issued including municipal elections on certain bond issuances.  The manner specified in the

Public Works Act for a municipal election for the issuance of bonds was different than the manner

specified in the City of Maryville's charter for municipal elections generally.  The Tennessee Supreme

Court held that for the purpose of issuing bonds under the Public Works Act, the City of Maryville

19

was required to follow the procedure set forth in the Public Works Act, not in its own charter.

*Trotter*, 235 S.W.2d at 18.   In so holding, the Tennessee Supreme Court explained:

> In the instant case there is clearly a conflict between the general act (the Public Works Act) and that incorporating or specifying the powers of the City of Maryville. The [Public Works Act] in question provides the rather simple and specific means whereby the City fathers may hold this bond election; provides for those who may vote therein as those qualified to vote (living in the City of Maryville) and qualified to vote for members of the General Assembly in the election next preceding. The charter of the City of Maryville allows those living outside the City but owning property in the City to vote on City matters. The same legislature that gave birth to the City of Maryville also, at a later date, passed the [Public Works Act] now in question and provided a different means but a means applicable to only those things as provided for in the [Public Works Act] now questioned, Public Works. We think clearly that this constitutes an implied repeal of those provisions of the charter of the City of Maryville which are contrary to those as set out in the [Public Works Act]questioned. When there is an irreconcilable conflict the special or specific provision supersedes, controls and prevails over the general or broad provision. In other words, the holding of a bond election as specified in the questioned [Public Works Act] is an exception to the general or broad provision of the charter provisions of Maryville applying to the ordinary City elections.

*Id.* at 17-18.   While the Public Works Act as a whole was considered "general" in that it authorized all municipalities to carry out public works, it was "specific" about the manner in which municipalities were to hold elections to determine certain bond issues.   Thus, for purposes of the issuance of bonds under the Public Works Act, those provisions of the Public Works Act relating to municipal elections superseded the provisions under Maryville's city charter regarding how municipal elections were to be held generally.   As to municipal elections regarding other issues, the Maryville charter still applied. *Id.*   Similarly, as to the Delbert Lane Property, Ordinance No. 8697 applies to determine the permitted use, but as to other properties zoned R-3, Ordinance No. 11253 setting for the generally permitted uses of R-3 properties still applies.

20

For the reasons stated herein, the undersigned concludes Ordinance No. 8697 and Ordinance No. 11253 are in harmony with one another, and thus Ordinance No. 11253 does not effectively repeal Ordinance No. 8697.

## IV. Conclusion

The undersigned Magistrate Judge concludes the Zoning Board's decision to deny Wireless' Application to build a communications tower at 6980 Delbert Lane, Chattanooga, Tennessee is supported by substantial evidence. It is therefore RECOMMENDED that Wireless' motion for summary judgement (Doc. 24) be DENIED and the City's motion for summary judgment (Doc. 22) be GRANTED.[6]

Dated: March 9, 2009      s/William B. Mitchell Carter
               UNITED STATES MAGISTRATE JUDGE

---

[6] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).