UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| STATE OF TENNESSEE *ex rel* | ) | |
| WIRELESS PROPERTIES, LLC, | ) | |
| | ) | |
| *Relator*, | ) | |
| | ) | Case No. 1:06-cv-157 |
| v. | ) | Judge Mattice |
| | ) | |
| CITY OF CHATTANOOGA, | ) | |
| | ) | |
| *Respondent*. | ) | |

## MEMORANDUM AND ORDER

Relator Wireless Properties, LLC ("Wireless") brings this action pursuant to the Telecommunications Act of 1996, 47 U.S.C. § 332, seeking review of Respondent City of Chattanooga's (the "City") denial of a special permit to construct a 180-foot monopole communications tower at 6908 Delbert Lane in Chattanooga, Tennessee.

Before the Court are Wireless' Motion for Summary Judgment [Court Doc. 22] and the City's Motion for Summary Judgment [Court Doc. 24]. By the Court's Order [Court Doc. 20] of March 6, 2008, this matter was referred to United States Magistrate Judge William B. Carter for a Report and Recommendation ("R&R") on the above motions pursuant to 28 U.S.C. § 636(b)(1)(A), (B), and (C) and Fed. R. Civ. P. 72(a). Magistrate Judge Carter entered his R&R [Court Doc. 35] on March 9, 2009, recommending that Wireless' Motion for Summary Judgment be denied and that the City's Motion for Summary Judgment be granted. Wireless has filed a timely objection to the R&R [Court Doc. 36] and the City has responded to these objections [Court Doc. 37].

For the reasons stated below, the Court will **OVERRULE** Wireless' objection and will **ACCEPT AND ADOPT** Magistrate Judge Carter's Report and Recommendation.

## I.      STANDARD OF REVIEW

The Court must conduct a *de novo* review of those portions of the R&R to which an objection is made and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C).  For those portions of the R&R to which objections have been made, the Court will directly review the circumstances leading to the denial of Wireless' application for a permit.  *Id*.

Under the Telecommunications Act of 1996, a party may bring a cause of action alleging wrongful denial of a permit for a communications tower, and there are specific requirements which must be met in order for the state or governmental entity to successfully defend that decision.   The denial must "be in writing and supported by substantial evidence contained in a written record."  47 U.S.C. § 332(c)(7)(B)(iii).  The City of Chattanooga Board of Zoning Appeals ("Board") made the decision to deny Wireless' permit in writing and referenced a written record.  Therefore, the Court must determine if substantial evidence supports the City's denial of the permit to construct a communications tower.  *Id*.  Substantial evidence is defined for purposes of the Telecommunications Act as "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion."  *Telespectrum, Inc. v. Public Service Commission of Kentucky*, 227 F.3d 414, 423 (6th Cir. 2000).

## II.      FACTS

Magistrate Judge Carter's R&R fully sets forth the relevant facts in this case.  There have been no objections to the relevant facts as set forth in the R&R.  Accordingly, the Court **ACCEPTS AND ADOPTS BY REFERENCE** the "Relevant Facts" section of the

R&R.  (Court Doc. 35, R&R at 2-8.)

III.  **ANALYSIS**

The Board denied Wireless' permit to build a communications tower at 6908 Delbert Lane because Ordinance No. 8697 placed a very specific condition on the property when it was rezoned, in 1986, from R-2 to R-3.  The condition reads: "[o]nly one triplex can be constructed on this property."  (Court Doc. 24-4 at 32-33.)  The Board found that this condition excluded all other permissible uses within the R-3 zone, including communications towers.  After reviewing the record, Magistrate Judge Carter concluded that the Board's decision was supported by substantial evidence and, in general, most of Wireless' instant objections merely dispute that conclusion.

Many of Wireless' objections raise no new arguments but are simply a reargument of issues previously raised on summary judgment that were fully addressed in the R&R. The Court finds that further analysis of these same arguments would be cumulative and is unwarranted in light of Magistrate Judge Carter's well-reasoned and well-supported R&R. Because there is, in essence, only one argument posed by Wireless' objection, however, some of the points within that argument raise new issues, which the Court will now address.

A.  **Ambiguity of Ordinance**

The Board's decision turns on the interpretation of the language in Ordinance No. 8697, and Wireless raises several points about the meaning of such language.  Wireless initially contends that the R&R improperly finds that the phrase "[o]nly one triplex can be constructed on this property" is ambiguous.  (Court Doc. 36, Rel.'s Objs. at  2.)  Wireless

-3-

asserts that the language of the ordinance is not ambiguous and the plain meaning supports Wireless' interpretation that it only limits the number of triplexes to one and does not exclude all other uses permissible within the R-3 zone. (*Id.* at 1.) The R&R states that "[o]n its face, there is ambiguity in the usage of *only* in Ordinance No. 8697 which requires the undersigned to turn to Tennessee's rules of statutory construction." (R&R at 12.) The Court agrees that the language in this condition contains some ambiguities that must be resolved in order to afford the phrase its proper meaning, and the Court therefore cannot simply accept Wireless' interpretation of the meaning of Ordinance No. 8697.

Wireless next appears to assert an objection to the process Magistrate Judge Carter used to resolve this ambiguity. (Rel.'s Objs. at 2-3.) Magistrate Judge Carter first cited case law for the proposition that zoning ordinances should be construed in accordance with recognized rules of statutory construction. (R&R at 12-13.) The R&R establishes the basic rules of statutory construction in Tennessee by citing to this language:

> When interpreting statutes, a reviewing court must ascertain and give effect to the legislative intent without restricting or expanding the statute's intended meaning. The courts must examine the language of the statute and, if the language is unambiguous, apply the ordinary and plain meaning of the words used. Furthermore, every word in a statute is presumed to have meaning and purpose. In short, "the cardinal rule of statutory construction is to effectuate legislative intent, with all rules of construction being aides to that end."

*U.S. Bank, N.A. v. Tennessee Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009) (citations omitted). If language in a statute or ordinance is unambiguous, the inquiry would stop there and the plain meaning of the words would be given effect. Because, however, Magistrate Judge Carter determined that the language at issue in this case was ambiguous, he turned to the legislative intent as his next step in attempting to construe the

-4-

language appropriately. (R&R at 13.) This was a proper intermediate step according to recognized rules of statutory construction in Tennessee.[1] If Magistrate Judge Carter found that the intent of the legislative body, in this case the City Commission (the "Commission"), was also ambiguous, the final step would be to construe the ordinance's ambiguous language and intent in favor of the property owner's unrestricted use. (*Id.* (citing *Tennessee Manufactured Housing Ass'n v. Metro Gov't of Nashville*, 798 S.W.2d 254, 260 (Tenn. Ct. App. 1990))). Magistrate Judge Carter reviewed the notes of the hearings and documents related to the rezoning of the Delbert Lane property in 1986 and concluded that the Commission's intent in imposing the condition was unambiguous. (R&R at 13.) As a

---

[1] As the Tennessee Court of Appeals has stated:

> Our responsibility when construing a statute is to ascertain and to give effect to the statute's purpose without unduly restricting or expanding the statute's coverage beyond its intended scope. Our search for a statute's purpose begins with the words of the statute itself. If the statute is unambiguous, we need only enforce the statute as written. If, however, a statute is ambiguous, we may invoke the various rules of statutory construction, and we may consider the existing law, *the circumstances contemporaneous with the enactment of the statute, the circumstances inducing the statute's enactment*, and the evil sought to be addressed.
>
> *The legislative history of a statute can provide insight into the purpose of an ambiguous statute. Accordingly, courts confronted with statutory language that conveys more than one meaning may consider the legislative debates surrounding the statute's enactment.*

*In re Conservatorship of Clayton*, 914 S.W.2d 84, 90 (Tenn. Ct. App. 1995) (emphasis added) (citations omitted). *See also Carter v. State*, 952 S.W.2d 417, 419 (Tenn.,1997) (stating that "[w]hen the language is ambiguous and does not yield a clear interpretation, the court may consult the legislative history for additional interpretive guidance"); *Tennessee Manufactured Housing Ass'n v. Metropolitan Government of Nashville,* 798 S.W.2d 254, 257 (Tenn.App.,1990) (stating that, in the face of an ambiguous statute, the court would be "well advised to consult the statute's legislative history to ascertain the General Assembly's intent"); *Austin v. Memphis Pub. Co.*, 655 S.W.2d 146, 148 (Tenn.,1983) (holding that courts may "resort elsewhere to ascertain legislative intent" if a statute is ambiguous).

result, Magistrate Judge Carter's construction of the language of Ordinance No. 8697 ended, and he determined that the phrase was meant to limit *any* construction on the property to one triplex, therein excluding all other uses which might otherwise be permitted in an R-3 zone. (*Id.* at 15.)

Wireless argues that, instead of taking the intermediate step of attempting to determine the Commission's intent, Magistrate Judge Carter's finding of ambiguous language should have led immediately to a construction of the language in favor of the property owner. (Rel.'s Objs. at 2.) Wireless fails to acknowledge in this objection, however, that the Court may look to the legislative history to resolve facial ambiguities, even though it cited the following language in its Brief in Support of Motion for Summary Judgment: "when the language of a statute 'does not yield a clear interpretation, the court may consult a legislative history for additional interpretative guidance.'" (Court Doc. 25, Rel.'s Br. Supp. Mot. Summ. J. at 9-10 (quoting *Carter v. State*, 952 S.W.2d 417, 419 (Tenn. 1997))).

Magistrate Judge Carter properly followed the rules of statutory construction in Tennessee by first attempting to resolve ambiguities within the plain meaning of the zoning ordinance. Because the language was ambiguous, Magistrate Judge Carter next assessed the intent of the governing body in enacting that ordinance to resolve the ambiguity. (R&R at 13.) It was well within Magistrate Judge Carter's purview to review the circumstances contemporaneous with the enactment of the order–here, the notes of the Commission's decision–while attempting to discern the intent of the facially ambiguous ordinance. *See In re Conservatorship of Clayton*, 914 S.W.2d 84, 90 (Tenn. Ct. App. 1995). After review

of this information, Magistrate Judge Carter concluded that the documentation from the Commission's action in 1986 was clear enough to establish the proper meaning of Ordinance No. 8697. (*Id.*) Magistrate Judge Carter provided an extensive analysis of his reasons for finding that the notes from the 1986 action supported the interpretation that the condition was meant to limit all other R-3 uses of the property to respond to the specific zoning request and preserve the low-density residential character of the neighborhood. (*Id.* at 13-16.) Therefore, the ambiguity was resolved, and Magistrate Judge Carter concluded that the restriction was meant to exclude all other permissible uses in the R-3 zone. (*Id.*) After this determination was made, there was no need to engage in further construction of the ordinance's language in favor of the property owner; such a conclusion would only be warranted if the statute's meaning remained ambiguous.

In its next, and alternative, theory, Wireless accepts the process of statutory construction employed by Magistrate Judge Carter–which it had previously rejected–and argues reasons for finding that the Commission's intent *was* ambiguous. (Rel.'s Objs. at 3.) Its first contention is that Magistrate Judge Carter's conclusion does not make sense in the context of the Commission's discussion because such a condition excludes *all* other permissible uses in R-3, including lower density properties like single-family homes. (*Id.* at 4.) Wireless asserts that the Commission, logically, could not have intended such far-reaching implications if it was indeed concerned about maintaining a low density of development. (*Id.* at 6.) Therefore, it states, there is ambiguity as to the Commission's intent, and the ambiguity must be resolved in favor of the property owner. (*Id.*) The Court credits Magistrate Judge Carter's conclusion that the Commission's intent is unambiguous

and makes logical sense in the context of the decision to rezone the property as R-3. Although the R&R addressed the essence of this argument at length, the Court will briefly address the issue once more, as Wireless raises some additional points in its objection.

The owner of the property in 1986, Mr. Bobby Williams, petitioned the Chattanooga-Hamilton County Regional Planning Commission to rezone the property from R-2 to R-3 for the specific purpose of building a triplex. (Court Doc. 24-4 at 25.) While duplexes were permissible within the R-2 distinction, triplexes were not. (Court Doc. 29-1 at 11-12.) Mr. Williams already had the ability to construct a single-family home, a duplex, and several other structures when the property was zoned R-2, but there were three additional uses in the R-3 distinction unavailable to him at that time: apartment homes, boarding and lodging houses, and hospitals, nursing homes, and clinics. (*Id.* at 11-14.) As the R&R noted, there was no specific provision in R-3 for a triplex, but it was certainly not permissible when the property was zoned R-2. (R&R at 14.) Therefore, the Commission rezoned the property to R-3 at Mr. Williams' request, subject to the specific and special condition that "[o]nly one triplex can be constructed on this property." (Court Doc. 24-4 at 32-33.)

A review of the notes from the 1986 hearing makes it clear that the Commission intended to rule out any other uses then applicable to R-3 zones. The Commission discussed the need to maintain a low density of development, and the three higher density

-8-

uses allowed under R-3 but not under R-2 appeared to be of concern.[2] There was no need for the Commission to discuss the low-density uses that overlapped with R-2; after all, as the R&R noted, all of those uses were allowed while it was zoned R-2, and the current property owner had opted not to build any of those permissible structures. (R&R at 15.) If, at any time during the intervening 20 years, the current property owner had desired to construct a single-family home or some other low-density residential use, they could have petitioned to have the condition lifted or the property rezoned as R-2 to avail themselves of the permissible uses within that zone. The condition placed on 6908 Delbert Lane, therefore, applied so long as it was zoned R-3 and *because* it was zoned R-3. The Court agrees with Magistrate Judge Carter that the notes and circumstances surrounding the 1986 hearing support a conclusion that the condition excludes *all* other permissible R-3 uses. Because the property owner petitioned to have it rezoned to R-3 for the specific purpose of constructing a triplex, the Commission imposed a very specific condition that allowed only one possible structure–the requested triplex–and excluded all other R-3 uses, including those previously allowed while the property was zoned R-2 and those that were not.

---

[2] Although no party has emphasized this language as being particularly significant, the Court finds the following excerpt from the 1986 zoning hearing to be relevant in adopting Magistrate Judge Carter's conclusion regarding the Commission's intent:

> Barry Bennett . . . stated that the staff has no real problem with an additional duplex because of adjoining duplexes, but *that they do have a problem with additional R-3 because of trying to maintain a low density*.

(Court Doc. 24-4 at 29. (emphasis added)). This language, along with other language from the Regional Planning Commission's recommendation that low density was an issue because of an existing traffic problem, evince the Commission's intent to exclude the additional R-3 uses. (*Id.* at 26.)

-9-

The interpretation of the Commission's intent urged by Wireless–that the condition only limits the *number of triplexes*–is contrary to the Commission's intent. In reaching his conclusion and responding to Wireless' argument, Magistrate Judge Carter stated in the R&R that "[i]t does not make sense that the City Commission would limit triplexes to one in order to maintain the low density of the neighborhood but still intend to give the owner the option of building an apartment home or a boarding house or a nursing home on the same piece of property." (R&R at 14-15.) Wireless responds to this statement by arguing about the viability of other high-density uses in R-3. In essence, Wireless claims that Mr. Williams and subsequent owners would have been unable to construct any of these other R-3 structures due to size constraints of the property and special permit requirements, therefore making the Commission's intent ambiguous. (Rel.'s Objs. at 5-6.) As the R&R noted, however, "[t]he City Commission *never considered the possibility of any other structure permitted by R-3*." (R&R at 14. (emphasis added)).[3] The Commission did not contemplate the lot capacity or special requirements to construct the other high-density options allowed in an R-3 zone, but that does not make its intent in imposing the condition ambiguous.

Quite simply, the Commission was presented with a request for a specific spot zoning from R-2 to R-3 for a particular purpose not contemplated by either zone; it evaluated the request based on Mr. Williams' desire and the character of the area, and it concluded that a rezoning to R-3 for that specific purpose would be acceptable to the

---

[3]     Indeed, the Court notes that the Commission did not contemplate very many issues at all before creating this ordinance and its conditions. The notes from the 1986 hearing are less than one page, and the only issues raised concern density, traffic, and access roads. (Court Doc. 24-4 at 29.)

exclusion of all other R-3 uses.  The notes of the 1986 rezoning decision support the conclusion that the Commission was concerned about rezoning the property to R-3 due to higher density uses permissible in that zone.  (Court Doc. 24-4 at 29.)  There was no need for the Commission to address low-density uses because those were already available to the property owner when the land was zoned R-2 and could presumably be made available again through another rezoning.

Therefore, the Commission sought to exclude all other R-3 uses other than the one triplex that Mr. Williams wanted to build.  The Commission did not consider other factors such as whether or not Mr. Williams could actually construct a nursing home or apartment house on the property; nor did it consider whether or not he would even be able to build a triplex.  Perhaps if the Commission had discussed in greater detail the viability of these R-3 uses, there would be a different result; as it stands, however, the meaning of the ordinance in this context is clear, and it is construed to read that the only permissible use of the property, while it is zoned R-3, is to construct one triplex.  A review of the record supports the conclusion that the Board properly came to this conclusion regarding the meaning of the ordinance, and there is substantial evidence to support the subsequent denial of Wireless' permit based on this specific condition.

**B.      Repeal by Later-Enacted Ordinances**

Wireless' final argument is that Ordinance No. 8697 was repealed by later zoning ordinances that added additional uses, including communications towers, to the R-3 zone. (Rel.'s Objs. at 7.)  Magistrate Judge Carter reasoned that Ordinance No. 11253, created in 2002 and allowing communications towers in an R-3 zone subject to a special permit

requirement, did not repeal the special and specific condition placed on the Delbert Lane property when it was rezoned in 1986.  (R&R at 16-21.)  Wireless' argument on this issue is essentially a verbatim resubmission of the argument advanced in their Brief in Support of Motion for Summary Judgment.  (Rel.'s Br. at 10-11.)  Magistrate Judge Carter responded directly to Wireless' arguments and supporting citations in the R&R.  (R&R at 19-20.)  Therefore, the Court finds that this argument has already been thoroughly reviewed and addressed in the R&R and that it would be needlessly cumulative to address it again.  The Court finds that Magistrate Judge Carter's conclusion is well taken and supported by the facts and applicable law.

Accordingly, the Court agrees with Magistrate Judge Carter's conclusion that the decision of the Board was supported by substantial evidence.  Magistrate Judge Carter's recommendation that the decision of the Board be approved is **ACCEPTED and ADOPTED**.  Wireless' objections to the R&R are **OVERRULED**.  The City's Motion for Summary Judgment is **GRANTED** and Wireless' Motion for Summary Judgment is **DENIED**.

IV.    **CONCLUSION**

Based on the foregoing, the Court **ORDERS** the following:

•      Magistrate Judge Carter's Report and Recommendation [Court Doc. 35] is **ACCEPTED AND ADOPTED** in its entirety;

•      Wireless' Objection [Court Doc. 36] to Magistrate Judge Carter's Report and Recommendation is **OVERRULED**;

•      The City's Motion for Summary Judgment [Court Doc. 22] is **GRANTED**;

• Wireless' Motion for Summary Judgment [Court Doc. 24] is **DENIED**.


**SO ORDERED** this 7th day of January, 2010.


_____/s/Harry S. Mattice, Jr._____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE